### 76288. ROBBINS et al. v. LUMPKIN.
(370 SE2d 635)

CARLEY, Judge.
Appellee Luther David Lumpkin, who is mentally retarded, was placed by the probate court in the custody of the Georgia Retardation Center (GRC) for a six-month period of habilitation. See OCGA § 37-4-40. GRC is an instrumentality of appellant Department of Human Resources (DHR) and appellant Bobby Robbins is GRC's Superintendent (Superintendent). As the six-month period of appellee's committal drew to an end, GRC initiated the process of reevaluating him for

continued habilitation. See generally OCGA § 37-4-42. As the result of that reevaluation, the Superintendent served DHR and appellee with a petition seeking the entry of an order which would authorize appellee's continued habilitation for a period not to exceed one year. See OCGA § 37-4-42 (f).

Appellee's representative, acting pursuant to OCGA § 37-4-42 (h), requested a hearing before a DHR hearing examiner and such a hearing was subsequently conducted. Insofar as it is relevant to this appeal, the DHR hearing examiner made the following findings: "[Appellee] is appropriate for placement in the community. . . . [Appellee] is currently in the emergency treatment unit [of GRC]. This unit is for people who are dangerous to themselves or others. It is a locked, highly restrictive unit. . . . A bed appropriate to the specific needs of [appellee] is not available. . . . Services needed by [appellee] could be offered in an extremely less restrictive environment. . . . [Appellee] cannot live independently. . . . No alternative program for treatment of [appellee] is available at this time. . . . [Appellee] does not require direct medical services. . . ." Based upon these findings, the DHR hearing examiner further found that appellee's condition was not such as to warrant his continued involuntary commitment at GRC's emergency treatment unit, but that there was no alternative program available for a person, like appellee, who was in need of habilitation services offered in a less restrictive environment. Under these circumstances, the DHR hearing examiner's ultimate conclusion was that the Superintendent's petition for an order authorizing appellee's continued habilitation under inappropriate conditions at GRC should be dismissed, but that no alternative form of appropriate treatment could be afforded to appellee.

Because the effect of the DHR hearing examiner's order would be to afford no form of treatment for appellee whatsoever, his representative appealed to the superior court. See OCGA § 37-4-110. The superior court entered an order wherein it made extensive findings of fact and conclusions of law. For purposes of this appeal, the superior court's critical finding of fact was that DHR "has sufficient funds appropriated for [an alternative treatment program] and sufficient authority to purchase or provide the community services [appellee] needs." The superior court's crucial conclusion of law was that DHR "is responsible for purchasing or otherwise providing an appropriate small group home or developmental training home for [appellee] which can meet the needs listed in the individualized program plans for [appellee]." Based upon these and its other findings and conclusions, the superior court included in the remedial portion of its order the direction that DHR "shall secure an appropriate program of community services, including community residential services to implement the individualized program plan of [appellee] within a period of

time not to exceed six months." Thus, the superior court's disposition of appellee's appeal was a holding that, although no source of alternative treatment for appellee was currently available, DHR was nevertheless required to make that source of alternative treatment available to him within a six-month period of time.

The Superintendent and DHR filed an application for a discretionary appeal to this court from the superior court's order. The application was granted and this appeal results.

1. The Superintendent and DHR enumerate the superior court's order as erroneous, urging that OCGA § 37-4-40 (e), "upon which the [superior] court relie[d], does not authorize the [superior] court to order [DHR] to establish a habilitation program as an alternative to habilitation in a facility, in the event that no such alternative program is already available."

In resolving the issue as to the extent of the superior court's appellate authority in this case, we must delineate at the outset what this appeal does and does not involve. The *initial proceeding* whereby the probate court was petitioned for the *initiation* of a court-ordered program of services for appellee is *not* involved in this appeal. Appellee's initial commitment for habilitation to GRC by the probate court, acting pursuant to OCGA § 37-4-40, is res judicata. What this appeal *does* involve is the appellate review of the *subsequent proceeding* for the *continuation* of appellee's habilitation, which proceeding was initiated by the Superintendent pursuant to OCGA § 37-4-42. Under subsection (h) of OCGA § 37-4-42, it was the DHR hearing examiner who was vested with the authority to make the determination as to the need for, and the terms and implementation of appellee's continued habilitation: "After [conducting a full and fair] hearing, the hearing examiner may issue any order which the court is authorized to issue under subsection (f) of Code Section 37-4-40, provided that the hearing examiner may order the client's continued habilitation for a period not to exceed one year, subject to the power of the [S]uperintendent to discharge the client under subsection (b) of Code Section 37-4-44." Accordingly, the issue to be resolved is the appellate authority of the superior court in the context of an appeal from an order entered by a DHR hearing examiner pursuant to OCGA § 37-4-42 (h).

As the result of his initial committal by the probate court to GRC, appellee was in the custody of DHR. See OCGA § 37-1-21 (a) (5). Therefore, in making any determination as to appellee's continued habilitation, the DHR hearing examiner was, in effect, making an administrative determination as to whether DHR should continue to exercise its custody over appellee and, if so, how that continued custody should be exercised and implemented. Accordingly, the appellate authority of the superior court to review the order of the DHR hear-

ing examiner must ultimately be considered from the perspective of appellate review of an administrative determination reached by a governmental agency which is charged with responsibility for appellee's custody. "An administrative agency is 'a governmental authority, *other than a court and other than a legislative body,* which affects the rights of private parties through either adjudication or rulemaking' [Cit.] . . . 'The primary function of administrative agencies is to advance the will and weal of the people as ordained by their representatives — the Legislature. These agencies are created in order to perform activities which the Legislature deems desirable and necessary to forward the health, safety, welfare and morals of the citizens of this State. While these agencies at times perform some activities which are legislative in nature and thus have been dubbed as quasi-legislative duties, they in addition take on a judicial coloring in that frequently, within the exercise of their power, they are called upon to make factual determinations and thus adjudicate, and it is in that sense that they are also recurrently considered to be acting in a quasi-judicial capacity. This dual role which administrative agencies play has long been accepted in this State as being constitutionally permissible. [Cits.] However, this authority is not the same and, therefore, is distinguishable from the exercising of the "judicial powers" of this State. . . .' [Cit.]" (Emphasis in original.) *Bentley v. Chastain,* 242 Ga. 348, 350 (1) (249 SE2d 38) (1978).

In analyzing the extent of permissible judicial review of administrative decisions, "we not only consider the nonjudicial role of these agencies, but also must recognize the important function that administrative agencies perform at all levels of government. Whether operating in the federal, state, or local sphere, agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, *their decisions are not to be taken lightly or minimized by the judiciary. Review overbroad in scope would have the effect of substituting the judgment of a judge or jury for that of the agency, thereby nullifying the benefits of legislative delegation to a specialized body.* Since the agency is exercising neither judicial nor legislative, but administrative, powers, the separation of powers doctrine along with this policy of respect must play a role in determining the nature of the review of agency decisions by the courts. It is axiomatic that, under the separation of powers, nonjudicial functions may not be imposed on a constitutional court. [Cits.] 'The duties or functions which the legislature may not transfer to the judiciary have been characterized as either legislative or executive. That many of these may be delegated to administrative agencies

has long been acknowledged. Their descriptive classification is not, however, the significant point. The vice lies in the fact that the duties or functions sought to be conferred upon the courts lie beyond the scope of judicial power. If the legislature cannot impose upon the courts the administrative duty or function of making an initial discretionary decision, it cannot do so by the fiction of an appeal which requires the court to adjudicate upon administrative rather than judicial considerations.' [Cits.] . . . Textwriters in the area of administrative law urge that *the focus of the courts in reviewing administrative decisions should be to evaluate the extent of discretion delegated to that agency and to see that the agency acts within the limits of its discretion in order to protect individuals against the unnecessary and uncontrolled use of that power.* The focus is controlling discretion through administratively established standards and safeguards. [Cit.] Therefore, *the only review authorized is that inherent in the power of the judiciary: Whether the agency acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights."* (Emphasis supplied.) *Bentley v. Chastain,* supra at 350-352. (Footnotes omitted.)

Thus, our Supreme Court has held that the only constitutionally authorized appellate review of an administrative decision is that "inherent in the power of the judiciary. . . ." *Bentley v. Chastain,* supra at 352. The issue thus becomes whether the superior court's order in the case at bar exceeded or was within the scope of that inherent power. OCGA § 37-4-110 provides that the appeal to the superior court from an order of a DHR hearing officer "shall be made in the same manner as appeals from the probate court to the superior court, except that the appeal shall be heard before the court sitting without a jury. . . ." OCGA § 5-3-29 further provides: "An appeal to the superior court in any case where not otherwise provided by law is a de novo investigation. It brings up the whole record from the court below; and all competent evidence shall be admissible on the trial thereof, whether adduced on a former trial or not. Either party is entitled to be heard on the whole merits of the case." Pursuant to the provisions of OCGA §§ 37-4-110 and 5-3-29, the superior court in the case at bar treated the appeal of appellee from the order of the DHR hearing examiner as a de novo investigation. The superior court proceeded to make its own determination as to the availability, establishment and implementation of an alternative treatment program for appellee's continued habilitation. In so doing, the superior court made a laudatory determination as to the administrative services which should be made available to appellee. As previously discussed, however, notwithstanding the literal provisions of OCGA §§ 37-4-110 and 5-3-39, the superior court's exercise of its authority to review the or-

der of DHR's hearing examiner was constitutionally limited to "that inherent in the power of the judiciary: Whether [DHR] acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to [appellee's] constitutional rights." *Bentley v. Chastain,* supra at 352. See also *DeKalb County v. Metro Ambulance Svcs.,* 253 Ga. 561, 562 (1a) (322 SE2d 881) (1984); *Strickland v. Douglas County,* 246 Ga. 640, 641 (1) (272 SE2d 340) (1980).

This court has no jurisdiction to declare the judicial review provisions of OCGA § 37-4-110 to be unconstitutional. It is, however, incumbent upon this court to insure that, in any given case, OCGA § 37-4-110 is constitutionally applied. OCGA § 37-4-110 can be constitutionally applied in the context of an appeal from an administrative order of a DHR hearing examiner as to continued habilitation only if the superior court bases its appellate review "on the criteria approved in *Strickland v. Douglas County,* 246 Ga., supra." *DeKalb County v. Metro Ambulance Svcs.,* supra at 563 (1a), fn. 1. Accordingly, the superior court's order in the case at bar must be reversed and the case must be remanded with direction that a new order, which comports with applicable constitutional standards, be entered by the superior court on appellee's appeal.

2. Remaining enumerations of error are moot by virtue of our holding in Division 1 and need not be considered.

*Judgment reversed and case remanded with direction. Deen, P. J., and Sognier, J., concur.*

DECIDED MAY 26, 1988 —
REHEARING DENIED JUNE 10, 1988 — ▮▮▮▮▮▮▮

*Jefferson J. Davis, Special Assistant Attorney General, Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Patricia Downing, Assistant Attorney General,* for appellants.

*Chandler R. Bridges,* for appellee.